UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LESLIE R. LYNCH,<br><br>                Petitioner,<br><br>    v.<br><br>RANDY BLADES, Warden,<br><br>                Respondent. | Case No. 1:15-cv-00598-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court is a Petition for Writ of Habeas Corpus, filed by Idaho state prisoner Leslie R. Lynch ("Petitioner" or "Lynch"), challenging Petitioner's Gooding County conviction on two counts of sexual abuse of a child under the age of sixteen. (Dkt. 1.) The Petition is now ripe for adjudication. The Court takes judicial notice of the records from Petitioner's state court proceedings, which have been lodged by Respondent. (Dkt. 11.) *See* Fed. R. Evid. 201(b); *Dawson v. Mahoney*, 451 F.3d 550, 551 n.1 (9th Cir. 2006).

All parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings in this case in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. (Dkt. 8.) Having carefully reviewed the record in this matter, including the state court record, the Court concludes that oral argument is unnecessary.

*See* D. Idaho L. Civ. R. 7.1(d). Accordingly, the Court enters the following Order denying habeas corpus relief.

## BACKGROUND

In 2008, Petitioner was charged in the Fifth Judicial District Court in Gooding County, Idaho, with crimes related to sexual misconduct with two minors that occurred in 1996 and 1997 and that were the basis of criminal charges filed in 1997. (State's Lodging B-5 at 1-2.) In 1997, the case against Petitioner was dismissed without prejudice "just prior to trial." (State's Lodging A-7 at 20.) The investigation into the 1996 allegations was reopened after similar sexual abuse allegations against Petitioner surfaced, though Petitioner was not charged on the basis of the later allegations. The 2008 case against Petitioner included new charges, for crimes that occurred in 1996 or 1997, which had not been included in the previous case.

Pursuant to a plea agreement and an amended information, Petitioner pleaded guilty to two counts of sexual abuse of a child under the age of sixteen. Petitioner was initially sentenced to concurrent unified terms of twenty years in prison with ten years fixed. (State's Lodging B-5 at 3.) Petitioner's sentence was later reduced to concurrent unified terms of fifteen years in prison with ten years fixed because, under the version of the statute in force when the crimes were committed, the maximum sentence for Petitioner's convictions was fifteen years. (*Id*. & n.3.)

Petitioner appealed, but the appeal was stayed when Petitioner filed a motion to withdraw his guilty plea. In support of his motion, Petitioner argued, among other things, that his trial counsel was ineffective for failing to file a motion to dismiss based on a

claim of pre-accusatory delay under the Due Process Clause. After an evidentiary

hearing, the trial court denied the motion. (State's Lodging A-7.)

On direct appeal, Petitioner contended that the trial court should have granted his

motion to withdraw the guilty plea because his trial counsel rendered ineffective

assistance by "failing to move to dismiss the complaint on due process ground [sic] for

the state's delayed prosecution." (State's Lodging B-2 at 27.) The Idaho Court of Appeals

rejected this argument, holding that Petitioner did not establish that he was prejudiced

from the pre-accusatory delay or that the state had an improper motive in delaying the

refiling of the charges. (State's Lodging B-5 at 14-15.) The Idaho Supreme Court denied

review. (State's Lodging B-11.)

Petitioner later filed a post-conviction petition, which the state district court

denied. (State's Lodging C-1 at 355-61, 409-25.) Petitioner appealed, and the Idaho Court

of Appeals affirmed. (State's Lodging D-4.) Petitioner did not file a petition for review

with the Idaho Supreme Court, and the Idaho Court of Appeals issued its remittitur.

(State's Lodging D-5.)

In his federal Petition, Petitioner asserts the following claims:

| Claim 1: | Ineffective assistance of trial counsel based on counsel's failure to discover the correct maximum sentence applicable to Petitioner's crimes, which affected the "original sentence of 20 years" and resulted in the trial court later "reduc[ing] only the indeterminate portion of Lynch's sentence." |
|---|---|
| Claim 2: | (a) Violation of Petitioner's Sixth Amendment right to a speedy trial, and (b) ineffective assistance of trial |

counsel in failing to raise a speedy trial issue prior to Petitioner's guilty plea.[1]

(Dkt. 1 at 2-6.) Although Petitioner refers to the Sixth Amendment right to a speedy trial when describing Claims 2(a) and 2(b) (Dkt. 1 at 6), the Speedy Trial Clause of the Sixth Amendment does not apply to pre-arrest, or pre-accusatory, delay. *United States v. Marion*, 404 U.S. 307, 321 (1971).

Therefore, the Court will construe Claim 2(a) as asserting a violation of the Due Process Clause based on pre-accusatory delay. *See id*. at 325-36 ("Nor have appellees adequately demonstrated that the pre-indictment delay by the Government violated the Due Process Clause. . . . Events of the trial may demonstrate actual prejudice, but at the present time appellees' due process claims are speculative and premature."). Similarly, the Court will construe Claim 2(b) as asserting ineffective assistance of counsel for failing to move to dismiss based on pre-accusatory delay under the Due Process Clause.

Respondent argues that Petitioner's claims are procedurally defaulted and that they fail on the merits.

## DISCUSSION

**1.      Claims 1 and 2(a) Are Subject to Dismissal as Procedurally Defaulted**

### *A.      Procedural Default Standard of Law*

A habeas petitioner must exhaust his or her remedies in the state courts before a federal court can grant relief on constitutional claims. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). To do so, the petitioner must invoke one complete round of the state's

---

[1]      In its Initial Review Order, the Court mistakenly omitted Claim 2(b) from its recitation of Petitioner's claims. (Dkt. 5 at 2.)

established appellate review process, fairly presenting all constitutional claims to the state courts so that they have a full and fair opportunity to correct alleged constitutional errors at each level of appellate review. *Id.* at 845. In a state that has the possibility of discretionary review in the highest appellate court, like Idaho, the petitioner must have presented all of his federal claims at least in a petition seeking review before that court. *Id.* at 847. "Fair presentation" requires a petitioner to describe both the operative facts and the legal theories upon which the federal claim is based. *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996).

The mere similarity between a federal claim and a state law claim, without more, does not satisfy the requirement of fair presentation. *See Duncan v. Henry*, 513 U.S. 364, 365-66 (1995) (per curiam). General references in state court to "broad constitutional principles, such as due process, equal protection, [or] the right to a fair trial," are likewise insufficient. *See Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999). The law is clear that, for proper exhaustion, a petitioner must bring his federal claim before the state court by "explicitly" citing the federal legal basis for his claim. *Lyons v. Crawford*, 232 F.3d 666, 669 (9th Cir. 2000), *as amended*, 247 F.3d 904 (9th Cir. 2001).

When a habeas petitioner has not fairly presented a constitutional claim to the highest state court, and it is clear that the state court would now refuse to consider it because of the state's procedural rules, the claim is said to be procedurally defaulted. *Gray*, 518 U.S. at 161-62. Procedurally defaulted claims include those within the following circumstances: (1) when a petitioner has completely failed to raise a claim before the Idaho courts; (2) when a petitioner has raised a claim, but has failed to fully

and fairly present it as a *federal* claim to the Idaho courts; and (3) when the Idaho courts have rejected a claim on an adequate and independent state procedural ground. *Id.*; *Baldwin v. Reese*, 541 U.S. 27, 32 (2004); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

### B.    *Claims 1 and 2(a) Are Procedurally Defaulted*

Petitioner did not fairly present Claim 1 or Claim 2(a) to the Idaho Supreme Court. Petitioner raised Claim 1 on appeal from the dismissal of his post-conviction petition. (State's Lodging D-1, D-3.) However, after the Idaho Court of Appeals affirmed (State's Lodging D-4), Petitioner did not file a petition for review in the Idaho Supreme Court. *See O'Sullivan*, 526 U.S. at 847 (requiring "state prisoners to file petitions for discretionary review when that review is part of the ordinary appellate review procedure in the State"). Because it is now too late for him to do so, Claim 1 is procedurally defaulted. *See Gray*, 518 U.S. at 161-62.

Petitioner did not raise Claim 2(a) to any state appellate court. Although he did raise (on direct appeal) the related claim that his trial counsel rendered ineffective assistance in failing to move to dismiss based on pre-accusatory delay as set forth in Claim 2(b), he did not separately present the underlying substantive claim of a violation of the Due Process Clause based on that delay. (State's Lodging B-2 at 27-34.) *See Rose v. Palmateer*, 395 F.3d 1108, 1112 (9th Cir. 2005) ("Here, although [the petitioner's] Fifth Amendment claim is related to his claim of ineffective assistance, he did not fairly present the Fifth Amendment claim to the state courts when he merely discussed it as one of several issues which were handled ineffectively by his trial and appellate counsel.

While admittedly related, *they are distinct claims with separate elements of proof, and each claim should have been separately and specifically presented to the state courts*." (emphasis added)). Because it is too late for Petitioner to present Claim 2(a) to the state courts, that claim is procedurally defaulted. *See Gray*, 518 U.S. at 161-62.

C.     ***Petitioner Has Not Shown Cause and Prejudice, or Actual Innocence, to Excuse the Procedural Default of Claims 1 and 2(a)***

The Court's conclusion that Claims 1 and 2(a) are procedurally defaulted does not end the inquiry. If a claim is procedurally defaulted, a federal court can still hear the merits of the claim if the petitioner meets one of two exceptions: (1) a showing of adequate legal cause for the default and prejudice arising from the default, *see Coleman v. Thompson*, 501 U.S. 722, 731 (1991), or (2) a showing of actual innocence, which means that a miscarriage of justice will occur if the claim is not heard in federal court, *see Schlup v. Delo*, 513 U.S. 298, 329 (1995); *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Neither an assertion of cause and prejudice nor an assertion of actual innocence under *Schlup* is an independent constitutional claim. Rather, these are federal procedural arguments that, if sufficiently established by the petitioner, allow a federal court to consider the merits of an otherwise procedurally-defaulted constitutional claim.

i.     <u>Cause and Prejudice</u>

To show "cause" for a procedural default, a petitioner must ordinarily demonstrate that some objective factor external to the defense impeded his or his counsel's efforts to comply with the state procedural rule at issue. *Murray v. Carrier*, 477 U.S. at 488. To show "prejudice," a petitioner generally bears "the burden of showing not merely that the

errors [in his proceeding] constituted a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire [proceeding] with errors of constitutional dimension." *United States v. Frady*, 456 U.S. 152, 170 (1982).

Petitioner's submissions do not establish cause and prejudice to excuse the default of Claim 1—that his trial counsel was ineffective for discovering the correct maximum sentence. Although, in limited circumstances, the procedural default of an ineffective assistance of counsel claim may be excused based on lack of counsel (or ineffective counsel) during initial-review post-conviction proceedings, *see Martinez v. Ryan*, 566 U.S. 1 (2012), and *Trevino v. Thaler*, 133 S. Ct. 1911 (2013), that equitable exception does not apply to claims that were defaulted because of a petitioner's failure to file a petition for review with the state's highest court. *See Martinez*, 566 U.S. at 16 (stating that a petitioner may not use, as cause to excuse default, any attorney error that occurred in "appeals from initial-review collateral proceedings, second or successive collateral proceedings, [or] petitions for discretionary review in a State's appellate courts"). Thus, Petitioner's lack of counsel on appeal from the dismissal of his post-conviction petition does not constitute cause to excuse his default of Claim 1.

With respect to Claim 2(a), Petitioner argues that his due process rights were violated based on pre-accusatory delay. Petitioner presented, on direct appeal, a claim that his counsel was ineffective in failing to dismiss the charges on that basis. (State's Lodging B-2.) Therefore, Petitioner can argue that his counsel's ineffectiveness constitutes cause to excuse the procedural default of Claim 2(a). *See Edwards v. Carpenter*, 529 U.S. 446, 452 (2000) ("A claim of ineffective assistance . . . generally

must be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.") (internal quotation marks and alteration omitted). Because that ineffectiveness claim is presented as Claim 2(b) of the Petition, the question of whether cause and prejudice excuses the default of Claim 2(a) necessarily rests on the Court's resolution of the merits of Claim 2(b). Therefore, for the reasons set forth below in the Court's discussion of Claim 2(b), *see* Section 2, *infra*, Petitioner's attorney was not ineffective in failing to raise an issue of pre-accusatory delay, and Petitioner has failed to establish cause and prejudice to excuse the default of Claim 2(a).

      ii.     <u>Fundamental Miscarriage of Justice</u>

The fundamental miscarriage of justice exception allows a federal habeas court to hear a procedurally defaulted claim if the petitioner shows that he is actually innocent. Actual innocence in this context "means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998).

In asserting actual innocence, a petitioner must "support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). A procedurally defaulted claim may be heard under the miscarriage of justice exception only if "in light of all of the evidence, 'it is more likely than not that no reasonable juror would have found [Petitioner] guilty beyond a reasonable doubt.'" *United States v. Avery*, 719 F.3d 1080, 1083 (9th Cir. 2013) (quoting *Schlup*, 513 U.S. at 327). Stated another way, it must be more likely than not that *every* reasonable juror would vote to acquit.

**MEMORANDUM DECISION AND ORDER - 9**

This is an extremely demanding standard that "permits review only in the 'extraordinary' case." *House v. Bell*, 547 U.S. 518, 538 (2006). A court considering whether a petitioner has established actual innocence must consider "all the evidence, old and new, incriminating and exculpatory, admissible at trial or not." *Lee v. Lampert*, 653 F.3d 929, 938 (9th Cir. 2011) (en banc) (internal quotation marks omitted). The actual innocence standard "does not turn on discrete findings regarding disputed points of fact, and '[i]t is not the district court's independent judgment as to whether reasonable doubt exists that the standard addresses.'" *House v. Bell*, 547 U.S. 518, 539-40 (2006) (quoting *Schlup*, 513 U.S. at 329 (alteration in original)). Rather, the court must "make a probabilistic determination about what reasonable, properly instructed jurors would do." *Schlup*, 513 U.S. at 329.

Petitioner has not made a colorable showing of actual innocence under *Schlup*, 513 U.S. at 329. Petitioner's self-serving statements that he did not commit the crime are insufficient to meet the extremely strict standard of the actual innocence gateway.

**2.      Petitioner Is Not Entitled to Habeas Relief on Claim 2(b)**

On direct appeal, the Idaho Court of Appeals rejected Petitioner's claim that his counsel rendered ineffective assistance by failing to move to dismiss the 2008 case based on pre-accusatory delay. (State's Lodging B-5.) The Court will now review that claim—presented here as Claim 2(b)—on the merits.

### *A.      Standards of Law for Review of the Merits of Claim 2(b)*

Federal habeas corpus relief may be granted on claims adjudicated on the merits in a state court judgment when the federal court determines that the petitioner "is in custody

in violation of the Constitution or laws or treaties of the United States." 28 U.S.C.

§ 2254(a). Under § 2254(d), as amended by the Anti-terrorism and Effective Death

Penalty Act of 1996 ("AEDPA"), federal habeas relief is further limited to instances

where the state court's adjudication of the petitioner's claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). In determining whether a petitioner is entitled to habeas relief, a

federal court reviews the state court's "last reasoned decision"—here, the decision of the

Idaho Court of Appeals. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991).

When a party contests the state court's legal conclusions, including application of

the law to the facts, § 2254(d)(1) governs. That section consists of two alternative tests:

the "contrary to" test and the "unreasonable application" test.

Under the first test, a state court's decision is "contrary to" clearly established

federal law "if the state court applies a rule different from the governing law set forth in

[the Supreme Court's] cases, or if it decides a case differently than [the Supreme Court]

[has] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694

(2002). Under the second test, to satisfy the "unreasonable application" clause of

§ 2254(d)(1) the petitioner must show that the state court—although identifying "the

correct governing legal rule" from Supreme Court precedent—nonetheless "unreasonably

applie[d] it to the facts of the particular state prisoner's case." *Williams (Terry) v. Taylor*, 529 U.S. 362, 407 (2000). "Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies [Supreme Court] precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error." *White v. Woodall*, 134 S. Ct. 1697, 1706 (2014) (emphasis omitted).

A federal court cannot grant habeas relief simply because it concludes in its independent judgment that the decision is incorrect or wrong; rather, the state court's application of federal law must be objectively unreasonable to warrant relief. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Bell*, 535 U.S. at 694. If there is any possibility that fair-minded jurists could disagree on the correctness of the state court's decision, then relief is not warranted under § 2254(d)(1). *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The Supreme Court has emphasized that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* To be entitled to habeas relief under § 2254(d)(1), "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

AEDPA deference is required even where the state court denied a petitioner's claim without expressly addressing it. In such a case, the federal court must "conduct an independent review of the record to determine what arguments or theories could have supported the state court's decision"; the court must then determine "whether it is possible fairminded jurists could disagree that those arguments or theories are

inconsistent with the holding in a decision of the Supreme Court." *Bemore v. Chappell*, 788 F.3d 1151, 1161 (9th Cir. 2015) (internal quotation marks and alterations omitted).

Though the source of clearly established federal law must come only from the holdings of the United States Supreme Court, circuit precedent may be persuasive authority for determining whether a state court decision is an unreasonable application of Supreme Court precedent. *Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 2000). However, circuit law may not be used "to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] Court has not announced." *Marshall v. Rodgers*, 133 S. Ct. 1446, 1450 (2013).

As to the facts, the United States Supreme Court has clarified "that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). This means that evidence not presented to the state court may not be introduced on federal habeas review if a claim was adjudicated on the merits in state court and if the underlying factual determination of the state court was not unreasonable. *See Murray v. Schriro*, 745 F.3d 984, 999-1000 (9th Cir. 2014).

Two separate statutory subsections govern a federal court's review of state court factual findings. When a petitioner contests the reasonableness of the state court's factual determinations based entirely on the state court record, a federal court must undertake a § 2254(d)(2) analysis. *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004). There are two general ways to challenge factual findings as unreasonable under § 2254(d)(2). "First, a petitioner may challenge the substance of the state court's findings and attempt

to show that those findings were not supported by substantial evidence in the state court record. Second, a petitioner may challenge the fact-finding process itself on the ground that it was deficient in some material way." *Hibbler v. Benedetti*, 693 F.3d 1140, 1146 (9th Cir. 2012) (internal citations omitted).

To be eligible for relief under § 2254(d)(2), the petitioner must show that the state court decision was based upon factual determinations that were "unreasonable . . . in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). A "state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010); *see also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold.").

Under the second subsection dealing with state court factual findings, 28 U.S.C. § 2254(e)(1), such findings are presumed to be correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. The Ninth Circuit has held that "the presumption of correctness and the clear-and-convincing standard of proof [as set forth in § (e)(1)] only come into play once the state court's fact-findings survive any intrinsic challenge [under § (d)(2)]; they do not apply to a challenge that is governed by the deference implicit in the 'unreasonable determination' standard of section 2254(d)(2)." *Taylor*, 366 F.3d at 1000.

Despite the Ninth Circuit's distinction between §§ (d)(2) and (e)(1) in *Taylor*, the relationship between § 2254(d)(2) and § 2254(e)(1) is not entirely clear. *See Wood*, 558 U.S. at 300 (declining to address the issue); *Murray v. Schriro*, 745 F.3d at 1001 (noting that the Supreme Court has, in some cases, assumed that § (e)(1) merely qualifies § (d)(2) and that "we too have continued to struggle with the relationship between §§ 2254(d)(2) and (e)(1) when reviewing state-court factual findings under AEDPA"). The uncertainty of the relationship between the two subsections is amplified in the Ninth Circuit as a result of the Supreme Court's abrogation of the underpinning of *Taylor*—that a federal could review, under § (e)(1), factual findings of a state court based on evidence not presented to that court even if the claim was adjudicated on the merits. *See Pinholster*, 563 U.S. at 180. However, any differences between § 2254(d)(2) and § 2254(e)(1) are rarely determinative. *See Wood*, 558 U.S. at 304-05 ("Because the resolution of this case does not turn on them, we leave for another day the questions of how and when § 2254(e)(1) applies in challenges to a state court's factual determinations under § 2254(d)(2)."); *Murray*, 745 F.3d at 1001 ("[W]e do not believe the difference between our two lines of cases is determinative in this case, and thus we need not resolve the apparent conflict to decide this case.").

If a petitioner satisfies § 2254(d)—either by showing that the state court's adjudication of the claim was contrary to, or an unreasonable application of, Supreme Court law or by establishing that the state court's factual findings were unreasonable— then the federal habeas court must review the petitioner's claim de novo. *Hurles v. Ryan*, 752 F.3d 768, 778 (9th Cir. 2014). De novo review is also required where the state

appellate court did not decide a properly-asserted claim or where an adequate excuse for the procedural default of a claim exists. *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002); *Dickens v. Ryan*, 740 F.3d 1302, 1321 (9th Cir. 2014) (en banc).

When considering a habeas claim de novo, a district court may, as in the pre-AEDPA era, draw from both United States Supreme Court and well as circuit precedent, limited only by the non-retroactivity rule of *Teague v. Lane*, 489 U.S. 288 (1989). Even under de novo review, however, if the factual findings of the state court are not unreasonable under § 2254(d)(2), the Court must apply the presumption of correctness found in 28 U.S.C. § 2254(e)(1) to any facts found by the state courts. *Pirtle*, 313 F.3d at 1167-68. Contrarily, if a state court factual determination is unreasonable, the federal court is not limited by § 2254(e)(1) and may consider evidence outside the state court record, except to the extent that § 2254(e)(2) might apply. *Murray v. Schriro*, 745 F.3d at 1000.

Even if a petitioner succeeds in demonstrating a constitutional error in his conviction, he is entitled to federal habeas relief only if the petitioner "can establish that [the error] resulted in 'actual prejudice.'" *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). Under the *Brecht* standard, an error is not harmless, and habeas relief must be granted, only if the federal court has "grave doubt about whether a trial error of federal law had substantial and injurious effect or influence in determining the jury's verdict." *O'Neal v. McAninch*, 513 U. S. 432, 436 (1995) (internal quotation marks omitted).

Claim 2(b) alleges ineffective assistance of counsel based on counsel's failure to move to dismiss the charges against Petitioner based on pre-accusatory delay. The Sixth

Amendment to the United States Constitution provides that a criminal defendant has a right to the effective assistance of counsel in his defense.

The standard for ineffective assistance of counsel claims was identified in *Strickland v. Washington*, 466 U.S. 668 (1984). A petitioner asserting ineffective assistance of counsel must show that (1) counsel rendered deficient performance, that is, "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) those errors were prejudicial in that they "deprive[d] the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687. A petitioner must establish both deficient performance and prejudice to prove an ineffective assistance of counsel case; on habeas review, the court may consider either prong of the *Strickland* test first, or it may address both prongs, even if one is deficient and will compel denial. *Id.* at 697.

Whether an attorney's performance was deficient is judged against an objective standard of reasonableness. *Id.* at 687-88. A reviewing court's inquiry into the "reasonableness" of counsel's actions must not rely on hindsight:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls

within the wide range of reasonable professional assistance;
that is, the defendant must overcome the presumption that,
under the circumstances, the challenged action might be
considered sound trial strategy. There are countless ways to
provide effective assistance in any given case. Even the best
criminal defense attorneys would not defend a particular
client in the same way.

*Id.* at 689 (internal citations and quotation marks omitted).

Strategic decisions, such as the choice of a defense or which witnesses to present,
"are virtually unchallengeable" if "made after thorough investigation of law and facts
relevant to plausible options." *Strickland*, 466 U.S. at 690. Moreover, an attorney who
decides not to investigate a potential defense theory is not ineffective so long as the
decision to forego investigation is itself objectively reasonable:

[S]trategic choices made after less than complete
investigation are reasonable precisely to the extent that
reasonable professional judgments support the limitations on
investigation. In other words, counsel has a duty to make
reasonable investigations or to make a reasonable decision
that makes particular investigations unnecessary. In any
ineffectiveness case, a particular decision not to investigate
must be directly assessed for reasonableness in all the
circumstances, applying a heavy measure of deference to
counsel's judgments.

*Id.* at 690-91. Further, counsel is not deficient in an area where an investigation would
not have been fruitful for the defense.

The Ninth Circuit has provided some insight into the *Strickland* standard when
evaluating an attorney's "strategy calls." These cases are instructive in the Court's
assessment of whether the state court reasonably applied *Strickland*. *Duhaime*, 200 F.3d
at 600. First, tactical decisions do not constitute ineffective assistance simply because, in

retrospect, better tactics are known to have been available. *Bashor v. Risley*, 730 F.2d

1228, 1241 (9th Cir. 1984). Second, a mere difference of opinion as to tactics does not

render counsel's assistance ineffective. *United States v. Mayo*, 646 F.2d 369, 375 (9th

Cir. 1981). Third, "counsel's investigation must determine trial strategy, not the other

way around." *Weeden v. Johnson*, ___ F.3d ___, No. 14-17366, slip op. at 13, 2017 WL

1416392, at *4 (9th Cir. April 21, 2017) ("Weeden's counsel could not have reasonably

concluded that obtaining a psychological examination would conflict with his trial

strategy without first knowing what such an examination would reveal.").

If a petitioner shows that counsel's performance was deficient, the next step is the

prejudice analysis. "An error by counsel, even if professionally unreasonable, does not

warrant setting aside the judgment of a criminal proceeding if the error had no effect on

the judgment." *Strickland*, 466 U.S. at 691. To satisfy the prejudice standard, a petitioner

"must show that there is a reasonable probability that, but for counsel's unprofessional

errors, the result of the proceeding would have been different." *Id*. at 694. As the

*Strickland* Court instructed:

> In making this determination, a court hearing an
> ineffectiveness claim must consider the totality of the
> evidence before the judge or jury. Some of the factual
> findings will have been unaffected by the errors, and factual
> findings that were affected will have been affected in
> different ways. Some errors will have had a pervasive effect
> on the inferences to be drawn from the evidence, altering the
> entire evidentiary picture, and some will have had an isolated,
> trivial effect. Moreover, a verdict or conclusion only weakly
> supported by the record is more likely to have been affected
> by errors than one with overwhelming record support. Taking
> the unaffected findings as a given, and taking due account of
> the effect of the errors on the remaining findings, a court

> making the prejudice inquiry must ask if the defendant has
> met the burden of showing that the decision reached would
> reasonably likely have been different absent the errors.

*Id.* at 695-96. To constitute *Strickland* prejudice, "[t]he likelihood of a different result

must be substantial, not just conceivable." *Richter*, 562 U.S. 86 at 112. To show prejudice

based on deficient performance of counsel in a case where, as here, the petitioner pleaded

guilty, the petitioner "must show that there is a reasonable probability that, but for

counsel's errors, he would not have pleaded guilty and would have insisted on going to

trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

The foregoing standard, giving deference to counsel's decision-making, is the de

novo standard of review. Another layer of deference—to the state court decision—is

afforded under AEDPA. In giving guidance to district courts reviewing *Strickland* claims

on habeas corpus review, the United States Supreme Court explained:

> The pivotal question is whether the state court's application
> of the *Strickland* standard was unreasonable. This is different
> from asking whether defense counsel's performance fell
> below *Strickland*'s standard. Were that the inquiry, the
> analysis would be no different than if, for example, this Court
> were adjudicating a *Strickland* claim on direct review of a
> criminal conviction in a United States district court. Under
> AEDPA, though, it is a necessary premise that the two
> questions are different. For purposes of § 2254(d)(1), "an
> unreasonable application of federal law is different from an
> incorrect application of federal law." *Williams*, *supra*, at 410,
> 120 S. Ct. 1495. A state court must be granted a deference
> and latitude that are not in operation when the case involves
> review under the *Strickland* standard itself.

*Richter*, 562 U.S. at 101. That is, when evaluating a claim of ineffective assistance of counsel in a federal habeas proceeding under § 2254(d), the Court's review of that claim is "doubly deferential." *Pinholster*, 563 U.S. at 190 (internal quotation marks omitted).

## B.    Discussion

During "the pre-accusatory stage of criminal proceedings, defendants are protected from undue delay by the applicable statute of limitations and the general proscriptions of the Due Process Clause."[2] *United States v. West*, 607 F.2d 300, 304 (9th Cir. 1979) (citing *Marion*, 404 U.S. at 322-24). In *United States v. Marion*, the Supreme Court described the requirements of due process in this situation as follows:

> the Due Process Clause of the [Fourteenth] Amendment would require dismissal of the indictment if it were shown at trial that the pre-indictment delay . . . caused substantial prejudice to [defendants'] rights to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused.

404 U.S. at 324. *Marion* stands for the proposition that pre-accusatory delay results in a due process violation only if the defendant was prejudiced by the delay and the delay was a tactical decision by the prosecutor to gain an advantage over the defendant. Relying on *Marion*, the Ninth Circuit has held that a due process claim based on pre-accusatory delay requires consideration of three elements: (1) actual prejudice to the defendant; (2) the length of the delay; and (3) the reason for the delay. *West*, 607 F.2d at 304.

Pre-accusatory delay based on the need to investigate and to establish probable cause does not violate the Due Process Clause, and that clause "does not permit courts to

---

[2]    There is no statute of limitations for the charge of sexual abuse of a child under the age of sixteen. *See* Idaho Code § 19-401(4).

abort criminal prosecutions simply because they disagree with a prosecutor's judgment as to when to seek an indictment." *United States v. Lovasco*, 431 U.S. 783, 790-91 (1977). In addition, "prosecutors are under no duty to file charges as soon as probable cause exists but before they are satisfied they will be able to establish the suspect's guilt beyond a reasonable doubt." *Id.* at 791.

To establish *Strickland* prejudice as to Claim 2(b), Petitioner must show a reasonable probability that, had his attorney moved to dismiss, that motion would have granted such that Petitioner would not have pleaded guilty. *See Hill*, 474 U.S. at 59. The motion would have been granted if Petitioner established actual prejudice from the delay and an improper government motive behind the delay.

In considering whether a motion to dismiss based on pre-accusatory delay would have been granted, the Idaho Court of Appeals appropriately relied on a state court decision that, in turn, relied on the United States Supreme Court's decision in *Marion*. (State's Lodging B-5 at 14, citing *State v. Kruse*, 606 P.2d 981, 982 (Idaho 1980) (per curiam).) The court of appeals accurately described Petitioner's claim as follows:

> Lynch argues he was substantially prejudiced because the delay caused a loss of evidence. He asserts witnesses, intended to be called to testify in the 1997 case, are now unable to be found and another witness has since died. Lynch also claims the State gained tactical advantages because the delay allowed for the development of 404(b) prior bad act evidence and the addition of two charges to the information. Finally, he claims prejudice because his bond requirement was higher in the re-filed case and, because he could not meet the bond requirement, the State gained another witness, a cellmate and jailhouse informant, to testify against Lynch. Lynch asserts that had defense counsel filed a motion to

dismiss for pre-accusatory delay, it would have been a
complete defense to the charges.

(*Id*.; *see also* State's Lodging B-2 at 27-34.)

The court then held that Petitioner had failed to establish actual prejudice from the

delay:

> Although a loss of evidence can constitute prejudice, Lynch
> does not assert who the witnesses are, now unable to be
> located or deceased, or to what those witnesses would have
> testified. Lynch provided defense counsel in the 2008 case
> with a list of character witnesses. He does not assert in any
> specific way that the unavailable witnesses from the 1997
> case would have added any evidence or testimony to the case
> in addition to those potential character witnesses. Lynch also
> fails to point to how the use of 404(b) evidence against him
> violated due process. The State did develop 404(b) evidence
> for use in the second case. However, most of that evidence
> was regarding acts by the defendant which occurred prior to
> the charges in 1997 and Lynch has not established that the
> continuing investigation of charges caused *substantial* and
> actual prejudice to him in the 2008 prosecution. *See United
> States v. Lovasco*, 431 U.S. 783, 790–91, 97 S. Ct. 2044, 52
> L.Ed.2d 752 (1977) (prosecuting a defendant following
> investigative delay does not deprive him of due process, even
> if his defense may be somewhat prejudiced by a lapse of
> time). As to the additional charges brought in 2008, any
> further investigation may result in additional or new charges.
> *See Averett*, 142 Idaho at 885, 136 P.3d at 356 ("[N]ew
> evidence constitutes a sufficient basis to dismiss and re-file
> charges."). Finally, Lynch has failed to establish prejudice by
> the State's additional witness, the cellmate, gained as a result
> of Lynch's incarceration during the 2008 case due to the
> higher bond requirement. Lynch made statements, similar in
> nature to those made to the cellmate, on other occasions to
> various individuals. Statements made by Lynch in 1997,
> nearly identical to those Lynch made to the cellmate, were
> permitted by the district court to be used in trial against
> Lynch when the court denied Lynch's motion to suppress
> based on illegal seizure.

(State's Lodging B-5 at 14-15.)

Relying on the original prosecutor's testimony that the earlier charges were dismissed "because of a lack of corroborating evidence," the state court went on to find that the delay in prosecuting the charges was not "a deliberate act by the State to harass, delay, or forum shop." (*Id*. at 15.) Because Petitioner had not established either actual prejudice from the pre-accusatory delay or an improper reason for the delay, the court rejected Petitioner's claim that his trial counsel rendered ineffective assistance in failing to move to dismiss based on that delay. (*Id*.)

Petitioner has not established that the court of appeals' decision (1) was an unreasonable application of *Strickland* or (2) was based on an unreasonable finding of fact. Although the length of time between the dismissal of the original charges and Petitioner's 2008 prosecution was substantial, Petitioner has not shown that this delay was motivated by the state's desire for a tactical advantage or that he suffered actual prejudice from the delay. Therefore, Petitioner has not established a reasonable probability that any motion to dismiss based on pre-accusatory delay would have been granted, he has not shown *Strickland* prejudice, and he is not entitled to relief on Claim 2(b) under 28 U.S.C. § 2254(d).

## CONCLUSION

For the foregoing reasons, Claims 1 and 2(a) will be dismissed as procedurally defaulted, and Claim 2(b) will be denied on the merits.

# ORDER

**IT IS ORDERED:**

1.    The Petition for Writ of Habeas Corpus (Dkt. 1) is DISMISSED IN PART

and DENIED IN PART, and this entire action is DISMISSED with

prejudice.

2.    The Court does not find its resolution of this habeas matter to be reasonably

debatable, and a certificate of appealability will not issue. *See* 28 U.S.C.

§ 2253(c); Rule 11 of the Rules Governing Section 2254 Cases. If

Petitioner wishes to appeal, he must file a timely notice of appeal with the

Clerk of Court. Petitioner may seek a certificate of appealability from the

Ninth Circuit by filing a request in that court.

DATED: **May 11, 2017**

Honorable Candy W. Dale
United States Magistrate Judge